**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
Julia K. Venditti (State Bar No. 332688)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com
jvenditti@bursor.com

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SEAN MCGINITY, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REIMAGINED PARKING LLC, d/b/a IMPERIAL PARKING (U.S.), LLC, a.k.a IMPARK, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:26-cv-02760-WHO<br><br>**FIRST AMENDED COMPLAINT**<br><br><u>CLASS ACTION – JURY TRIAL DEMANDED</u> |

Plaintiff Sean McGinity ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against Reimagined Parking LLC, d/b/a Imperial Parking (U.S.), LLC ("Impark") and Does 1-100 (collectively, the "Does") (collectively referred to as "Defendants" or "Impark"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a putative class action against Defendants for violations of Plaintiff's and other Class Members' right to privacy and protection of personally identifiable information ("PII") under Civil Code § 1798 ("§ 1798") and other relevant consumer protection statutes.

2. Automated License Plate Reader or Automated License Plate Recognition ("ALPR") systems are highspeed cameras—usually with accompanying software—that record, capture, analyze and store information about vehicles' make, model, and license plate numbers. Oftentimes, these cameras capture photographs of an entire vehicle as it passes, as well as its driver and passengers. The date and time that the photograph is taken is also captured.

3. ALPR systems are indiscriminate: they capture photographs of any vehicles that pass by the camera.[1] This means that, as more ALPRs are installed over wider geographic areas, a picture of a car's—and by extension, its driver's—activity can form over time. For example, "ALPR technology can be used to target drivers who visit sensitive places such as health centers, immigration clinics, gun shops, union halls, protests, or centers of religious worship."[2]

4. In response to concerns that "[t]he right to privacy is being threatened by the indiscriminate collection, maintenance, and dissemination of personal information" and that "[t]he increasing use of computers and other sophisticated technology has greatly magnified [that] risk"

---

[1] *Data Driven: What Is ALPR?*, ELECTRONIC FRONTIER FOUNDATION, https://www.eff.org/pages/what-alpr#:~:text=Historical%20investigations,may%20retain%20the%20data%20indefinitely (last accessed Feb. 2026)

[2] *Id.*

the California legislature passed § 1798 intending to limit the collection, use, and dissemination of ALPR data. (Civ. Code § 1798.1 (a)—(b).)

5. An organization known as SKIDATA Inc. ("Skidata"), a subsidiary of the company SKIDATA GmbH founded in 1977, is a nationwide, private vendor of ALPR cameras and other parking lot/garage technology that facilitates parking and ticketing.

6. Skidata provided ALPR systems to Impark for the purpose of capturing the license plate information, location, date, and time as Plaintiff and the Class Members entered and exited Impark's parking lots/garages. Upon information and belief, Impark has also been provided with, or has purchased, ALPR cameras and systems through other private vendors, the names of which are not publicly available and known only to Impark.

7. At all relevant times hereto, these ALPR systems have been in operation at Impark parking garages and lots, including the Impark parking lot located at 355 McAllister Street, San Francisco, CA 94102, and Impark's parking garage at the Holiday Inn Golden Gateway, located at 1500 Van Ness Avenue, San Francisco, CA 94109.[3]

8. At all relevant times hereto, Defendants have utilized and/or operated, without authorization or notice, the ALPR systems that captured the license plate information, location, date, and time that Plaintiff and Class Members entered and exited Impark's lots and garages.

9. The information collected by the ALPR systems constitutes PII and therefore is entitled to specific protections under the laws of California.

10. Plaintiff visited and parked at the Impark parking lot at 355 McAllister Street on December 5, 2025. In or around 2021, Plaintiff also visited and parked at the Impark parking

[3] *See* SF Controller, *Imperial Parking (U.S.), LLC, Needs to Improve Some Controls to Strengthen Its Operations at the Lombard Street Garage* (Aug. 29, 2019), https://sfcontroller.org/sites/default/files/Documents/Auditing/SFMTA%20Lombard%20Street%20Garage%20Report%2008.29.19.pdf ("To determine whether access to SKIDATA is limited to current Impark employees, we compared a list of employees provided by Impark with the list of users with access to the system. We found that the SKIDATA system access list includes accounts associated with SKIDATA, SFMTA, and Impark. Of the Impark accounts, three were general accounts used by Impark employees at the command center and were not assigned to individual users.").

garage located at the Holiday Inn Golden Gateway at 1500 Van Ness Avenue. On both occasions, Plaintiff's PII was captured by Impark's ALPR systems, without his knowledge or consent.

11. Defendants utilize ALPR systems to simplify the parking process and parking lot security amenities for visitors of its garages and lots, including the Impark parking lots/garages at 355 McAllister Street and the Holiday Inn Golden Gateway.

12. However, nowhere in Impark's parking garages or lots is there any proper, publicly-posted notice detailing Impark's use of ALPR systems. As a result, Plaintiff was unaware that Defendants' facilities contained ALPR systems or that parking in Defendants' facilities would result in the collection and storage of Plaintiff's PII or posed any risk of unauthorized disclosure of his PII.

13. Defendants' lack of notice induced reasonable consumers, like Plaintiff McGinity, into parking at Impark's parking lots, including the Impark parking lot located at 355 McAllister Street and the Impark parking garage located at the Holiday Inn Golden Gateway. Had Plaintiff and Class Members known that Defendants provided, implemented, utilized and maintained ALPR systems that captured their PII, they would not have parked there at all.

14. Impark's lack of publicly posted policies as required under Civil Code § 1798 violated Plaintiff and other similarly situated consumers' right to know who is collecting their ALPR data, the purposes of that collection, and how that data was being maintained, thereby entitling Plaintiff and Class Members to damages and injunctive relief.

15. Plaintiff asserts claims on behalf of himself and all others similarly situated for: (i) unauthorized access and use of ALPR information, (ii) failures to implement code compliant privacy policies and maintain a record of ALPR data and access to it, and (iii) negligence.

## PARTIES

16. Plaintiff Sean McGinity is a citizen of California, residing in Sacramento, California. On or around December 5, 2025, Plaintiff parked in the Impark parking lot located at 355 McAllister Street, San Francisco, CA. Plaintiff also parked in Impark's Holiday Inn Golden Gateway garage at 1500 Van Ness Avenue, San Francisco, CA, in or around 2021. On both

occasions, Plaintiff's data—including (among other things) his license plate number and the time he entered and exited Impark's parking facilities—was obtained and subsequently collected, stored, and transmitted by Defendants through their ALPR devices. Further, nowhere in Impark's parking facilities is there any proper, publicly-posted notice detailing Defendants' use of ALPR systems, as required by Civil Code § 1798. As a result, on both occasions, Plaintiff was and remained unaware that Impark was using ALPR systems in its parking facilities until investigation by his counsel. Had Plaintiff known that Defendants provided, implemented, utilized and maintained ALPR systems that captured his PII, he would not have parked there at all.

17. Defendant Reimagined Parking LLC, d/b/a Imperial Parking (U.S.), LLC, is a Delaware limited liability company with its principal place of business located at 307 7th Avenue, Suite 301 New York, NY 10001.

18. Defendant Impark owns and/or operates approximately 3,000 parking locations across more than 500 cities in the United States and Canada. Impark owned and/or operated ALPR equipment and systems that photographed Plaintiff's and Class Members' license plate numbers at its parking lots and garages, including Impark's parking lot/garage at 355 McAllister Street, San Francisco, CA 94102 and its lot/garage at the Holiday Inn Golden Gateway, 1500 Van Ness Avenue, San Francisco CA 94109.

19. Impark is also secondarily liable based on aiding and abetting, agency, conspiracy, "furnishing the means" for another's violations, respondeat superior, and alter ego for the various acts and omissions set forth below, which injured Plaintiff and the Class Members.

20. Plaintiff is unaware of the true identities and capacities of fictitiously named defendants designated as Does 1—100 but will amend this complaint or any subsequent pleading when their identities and capacities have been ascertained according to proof. On information and belief, every Doe Defendant is in some way responsible for the acts and conduct of the other defendants herein, and each Doe was, and is, responsible for the injuries, damages, and harm incurred by Plaintiff. Each reference in this complaint to "Defendants," or a specifically named defendant, refers also to Impark and those unknown parties sued under fictitious names.

## JURISDICTION AND VENUE

21. The Court has personal jurisdiction over Defendant Impark because it purposefully maintains, operates, or owns multiple parking lots and garages in the State of California, including the Impark parking lot/garage at 355 McAllister Street, San Francisco, CA 94102 and the Impark-operated Holiday Inn Golden Gateway parking garage, located at 1500 Van Ness Avenue, San Francisco CA 94109.

22. The Court also has personal jurisdiction over each of the Does, who, upon information and belief, reside in California.

23. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs and at least one member of the proposed Classes is a citizen of state different from Defendant.

24. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### I. Overview of ALPR Camera Use

25. ALPR systems are a type of computer-controlled camera system that "automatically capture[s] all license plate numbers that come into view, along with the location, date, and time."[4]

26. They are often used in the form of "mobile units attached to police vehicles or stationary/fixed units that are mounted on utility poles, traffic lights, billboards, bridges, etc."[5] "The data, which includes photographs of the vehicle and sometimes its driver and passengers, is then uploaded to a central server."[6]

---

[4] *Automated License Plate Readers*, ELECTRONIC FRONTIER FOUNDATION, https://sls.eff.org/technologies/automated-license-plate-readers-alprs (last updated Oct. 1, 2023).

[5] *An Evaluation of a Major Expansion in Automated License Plate Reader (ALPR) Technology*, JUSTICE EVALUATION JOURNAL, https://www.tandfonline.com/doi/full/10.1080/24751979.2025.2473363#abstract (Mar. 6, 2025).

[6] *Automated License Plate Readers*, ELECTRONIC FRONTIER FOUNDATION, https://sls.eff.org/technologies/automated-license-plate-readers-alprs (last updated Oct. 1, 2023).

27. ALPR technology is not new. It has existed in some form since the 1970s but rose to prevalence in the United States starting in 2009.

28. The primary users of ALPRs are local/municipal law enforcement agencies, county/sheriff's offices, and state police/highway patrol.[7]

29. But ALPR use is not limited to law enforcement agencies. ALPR systems are also implemented by private entities, including in parking lots and garages, homeowners' associations, gated communities, and shopping malls.

30. "ALPR data is gathered indiscriminately, collecting information on millions of ordinary people. By plotting vehicle times and locations and tracing past movements, police can use stored data to paint a very specific portrait of drivers' lives, determining past patterns of behavior and possibly even predicting future ones—in spite of the fact that the vast majority of people whose license plate data is collected and stored have not even been accused of a crime."[8]

31. This data is often stored on the ALPR server for years without the person whose data is being stored having any knowledge of the fact.

32. Privacy and civil rights organizations have been sounding the alarm on these types of surveillance systems for years. They warn that this rapidly developing technology, initially used for proper law enforcement and community protection, will ultimately reach beyond its original purpose.

---

[7] *An Evaluation of a Major Expansion in Automated License Plate Reader (ALPR) Technology*, JUSTICE EVALUATION JOURNAL, https://www.tandfonline.com/doi/full/10.1080/24751979.2025.2473363#abstract (Mar. 6, 2025).

[8] *Data Driven: What Is ALPR?*, ELECTRONIC FRONTIER FOUNDATION, https://www.eff.org/pages/what-alpr#:~:text=Historical%20investigations,may%20retain%20the%20data%20indefinitely (last accessed Feb. 2026)

33. Specifically, they warn that this technology can be used to target protestors, dissidents,[9] activists and even individuals who are the subject of personal vendettas.[10]

**II. Plaintiff's Particularized Experience**

34. Plaintiff McGinity is a citizen of California, residing in Sacramento, California.

35. On or around December 5, 2025, Plaintiff parked in the parking lot located at 355 McAllister Street, San Francisco, CA. Plaintiff also parked in the Holiday Inn Golden Gateway parking garage located at 1500 Van Ness Avenue, San Francisco, CA, in or around 2021.

36. Impark operates numerous parking facilities in California, including the parking facilities located at 355 McAllister Street and the Holiday Inn Golden Gateway. At both facilities, consumers may pay a fee to utilize the parking structure.

37. Further, at both facilities, Impark utilizes, without publicly posted notice, ALPR systems to simplify the parking experience, provide security, and keep track of entering and exiting vehicles. This technology captures the license plate number, time, date, and location of all drivers that enter or exit Impark's parking facilities.

38. Impark's use of ALPR cameras is not limited to the parking facilities located at 355 McAllister Street and the Holiday Inn Golden Gateway. Impark also utilizes ALPR systems at many of its other parking facilities located in and throughout California.

39. Plaintiff and Class Members had no idea such technology would be tracking them and they never provided Defendants with authorization to have their license plates and other PII captured and stored when they enter the parking garages and lots, and no meaningful notice is provided to customers.

---

[9] *Flock Safety and Texas Sheriff Claimed License Plate Search Was for a Missing Person. It Was an Abortion Investigation*, ELECTRONIC FRONTIER FOUNDATION, https://www.eff.org/deeplinks/2025/10/flock-safety-and-texas-sheriff-claimed-license-plate-search-was-missing-person-it (Oct. 7, 2025).

[10] *Police chief gets caught using license plate cameras to track his ex-girlfriend 228 times*, WKRC/LOCAL 12, https://local12.com/news/nation-world/police-chief-gets-caught-using-license-plate-cameras-to-track-his-ex-girlfriend-228-times-arrests-charges-probation-flock-safety-follow-stalk-new-boyfriend-broke-up-out-of-town-misuse (Aug. 18, 2024).

40. At all relevant times, there were no signs posted in or around the Impark parking facilities located at 355 McAllister Street and the Holiday Inn Golden Gateway that would indicate to consumers that Impark utilizes ALPR technology or convey Impark's ALPR policies as required by Civil Code § 1798.

41. As of April 22, 2026, Defendants' ALPR policies are not properly posted at Impark's parking facilities, and they are not conspicuously available on Defendants' websites.

42. Impark's general website, www.impark.com (the "Impark Website"), does not contain an ALPR policy made available for website visitors. Rather, Impark simply states as part of its Privacy Notice that "[a]t the physical locations that we operate or manage, we may use license plate recognition technology to view and collect license plate data, or we may manually view and collect license plate data, from the vehicles of customers entering those locations."

43. Beyond that, the Impark Website does not provide: (A) "The authorized purposes for using the ALPR system and collecting ALPR information"; (B) "A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information" or "the training requirements necessary for those authorized employees and independent contractors"; (C) "A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws"; (D) "The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons"; (E) "The title of the official custodian, or owner, of the ALPR system responsible for implementing this section"; (F) "A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors"; or (G) "The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information." Civ. Code § 1798.90.51(b)(2)(A)-(G); *see also* Civ. Code § 1798.90.53(b)(2)(A)-(G) (same). Accordingly, Impark wholly fails to comply with the requirements of Civil Code sections 1798.90.51(b)(2) and 1798.90.53(b)(2).

44. Plaintiff did not discover, nor did he have reason to discover, his cause of action under Civil Code § 1798, the existence of the ALPR systems at Defendants' parking facilities, or the resulting harm that was done to him by Defendants' acts until February 20, 2026. He discovered this information only after investigation by his counsel revealed that the Impark facilities he visited indeed contained ALPR systems and that Impark had failed to publicly or conspicuously post any ALPR policies associated with those systems in violation of Civil Code § 1798. Until his counsel's investigation revealed Defendants' misconduct, Plaintiff did not have adequate knowledge regarding the facts of his claims.

45. Plaintiff was unable to discover the harm caused by Plaintiffs' actions earlier, despite reasonable diligence.

46. This is because Impark's refusal to publicly post a policy revealing its ALPR usage prevented Plaintiff from discovering the harm flowing from Plaintiff's use of Defendants' parking facilities, including the Holiday Inn Golden Gate garage in 2021. Defendants' violation of Plaintiff's right to know about the collection and/or use of his ALPR information or Impark's other ALPR policies also prevented Plaintiff from discovering the harm in the first place.

47. As noted, Impark has failed to provide a publicly available ALPR policy on the Impark Website—conspicuously or at all—as required under Civil Code § 1798, that would inform him of Defendants' use of ALPR technology at the Holiday Inn Golden Gate garage. Even if Plaintiff had diligently investigated Defendants' website and policies, including by searching for and accessing the Holiday Inn Golden Gate "lot details" webpage on the Impark Website, he would not be able to discover Defendants' use of ALPR technology at that facility because that webpage makes no reference to the ALPR system featured at the Holiday Inn Golden Gate garage or any ALPR policies applicable thereto:




48. When Plaintiff and similarly situated individuals visit Impark's parking facilities, at no point upon entering or exiting the parking lots or garages do they provide authorization to have their license plate information collected, along with their locations, and amount of time they spend at the garage.

49. Plaintiff visited the 355 McAllister Street parking lot on December 5, 2025. On that occasion, Plaintiff McGinity arrived at Impark's 355 McAllister Street parking lot and proceeded to find an open parking space. Plaintiff parked his car in the lot. Upon his return, Plaintiff McGinity entered his vehicle and drove away.

50. Plaintiff visited the Holiday Inn Golden Gateway parking garage in 2021. On that occasion, Plaintiff McGinity arrived at Impark's Holiday Inn parking garage and proceeded to find an open parking space. Plaintiff parked his car. Upon his return, Plaintiff McGinity entered his vehicle and drove away.

51. However, unknown to Plaintiff McGinity, at all times upon parking at the Impark facilities and upon leaving the facilities, Defendant utilized ALPR cameras that transferred to a database Plaintiff's license plate number, location, and amount of time he spent parked in the facility.

52. Defendants obtained and continue to maintain Plaintiff McGinity's information which includes his license plate number, location at time of entry and exit, and the time he spent parked at the Impark garages. Thus, the ALPR servers operated by Defendants contained PII[11] of Plaintiff, and similarly situated individuals, and Defendants had a legal duty to protect that PII.

53. Plaintiff McGinity was injured by Defendants' actions because he faced future identity theft via his ALPR data and suffered a loss of value in his PII and ALPR data. The data was misused and collected without authorization.

54. Plaintiff McGinity, unknowingly, was required to provide his PII in order to receive parking services. If he had known the truth about Defendants' practices, he would not have entrusted his private information to Defendants.

55. Plaintiff McGinity is very concerned about potential identity theft and fraud and the corresponding consequences of such theft or fraud because of improper storage or sharing of his PII.

56. Plaintiff McGinity suffered actual injury from having his PII compromised by Defendants including, but not limited to, (a) damage to and diminution of the value of his property interest in his PII, (b) violation of his right to privacy, and (c) imminent and impending injury arising from an increased risk of identity theft and fraud.

57. Plaintiff McGinity further suffered actual injury from Defendants' actions because his right to know about the collection, use, maintenance and disclosure of his ALPR data and PII was violated when Defendants chose not to conspicuously post their ALPR policies.

[11] "'Personal information' means any information that identifies, relates to, describes, or is capable of being associated with, a particular individual … 'Personal information' does not include publicly available information that is lawfully made available to the general public from federal, state, or local government records." (Civ. Code § 1798.8 (e).)

58. Most ALPR data is sent to law enforcement agencies who use the information to locate stolen vehicles and people with outstanding arrest warrants. (*See generally Automated License Plate Readers*, *supra*.) Thus, the ALPR data taken of Plaintiff's vehicle was transmitted to federal and state law enforcement authorities without a search warrant and not for legitimate purposes.

59. Defendant Impark does not provide consumers with ample information to discern that their parking lots or garages utilize ALPR systems, nor the gravity of the information obtained and the dangers for which it could be used for.

60. Specifically, Defendant Impark does not make available or conspicuous to the public a usage and/or privacy policy about its ALPR cameras.

61. Defendant Impark does not provide written notice to the public about its ALPR usage in its garages or lots.

62. Defendants employ the ALPR system for vehicle identification and parking management.

63. Based on information and belief, Plaintiff alleges that at all times within the relevant class period that all acts alleged herein as to Defendant Impark were authorized and directed by the remaining defendants who ratified, adopted, condoned, and approved of those acts with full knowledge of the consequences.

64. Based on information and belief, Plaintiff alleges that Defendants agreed to commit the unlawful actions described in this complaint with the intention to defraud and deprive Plaintiff, and similarly situated Class Members of their PII, and share it with unauthorized third parties. Each defendant committed actions in furtherance of this agreement, consequently causing injury to Plaintiff.

## <u>CLASS ALLEGATIONS</u>

65. ***Class Definition:*** Pursuant to Federal Rule of Civil Procedure 23, Plaintiff McGinity brings this action on behalf of himself and other similarly situated individuals, defined as any person who, during the class period, had their personally identifiable information collected

from ALPR systems at Impark's California-based parking lots, garages and structures without notice, authorization, or consent (the "Class").

66. Excluded from the Class are governmental entities, Defendants, and Defendants' affiliates, parents, subsidiaries, employees, officers, or directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff. Plaintiff reserves the right to modify or expand the definition of the Class to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

67. ***Numerosity:*** Members of the Class are so numerous that their individual joinder herein is impractical. On information and belief, the Class includes thousands of consumers. The precise number of Class Members and their identities are unknown to Plaintiff at this time, but it is estimated to be in the thousands. Class Members may be notified of the pendency of this action by mail, email, and/or publication.

68. ***Ascertainability:*** The proposed class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein because the rights of each proposed class member were infringed or violated in the same fashion.

69. ***Commonality and Preponderance:*** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to:

- whether Defendants captured images of Plaintiff and Class Members without authorization;
- whether Defendants conduct violated the Civil Code § 1798;
- whether Plaintiff and Class Members have been harmed and the proper measure of relief; and
- whether Plaintiff and the Class are entitled to attorney's fees and costs.

70. ***Typicality:*** Plaintiff's claims are typical of the claims of the proposed Class he seeks to represent because Plaintiff, like all members of the Class, were induced by the Defendants' lack of notice of the utilization of ALPR systems and subsequently used or accessed parking amenities

without knowing that Defendants would collect his PII. The representative Plaintiff, like all members of the Class, has been injured by the Defendants' misconduct in the very same way as the members of the Class. Further, the factual bases of the Defendants' misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

71. ***Adequacy:*** Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class, he has retained counsel competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

72. ***Superiority:*** A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish the Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also represents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of the Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

73. Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

74. Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Class and will likely retain the benefits of wrongdoing.

75. Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**
**Violation of California Civil Code § 1798.90.54**
**(Unauthorized Access and Use of ALPR Information)**
(By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants, Including Does 1—100)

76. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint as though alleged in this Count.

77. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants.

78. Plaintiff Sean McGinity is a natural person and thus, an "individual" pursuant to § 1798.90.54.

79. Defendant Impark is a "person" pursuant to § 1790.90.5(e) because it is a "limited liability company."

80. Impark and the Does *accessed* "ALPR information" pursuant to § 1798.90.5 because they collected Personal Information or data of Plaintiff and the Class through the use of an "ALPR system" at Impark's parking lots and garages in California. Specifically, Defendants owned or operated a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

81. Impark and the Does *used* "ALPR information" pursuant to § 1798.90.5 because they collected Personal Information or data of Plaintiff and the Class through the use of an "ALPR system" at the 355 McAllister Street parking lot/garage and the garage at the Holiday Inn Golden Gateway. Specifically, Defendants owned or operated a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

82. The California legislature has defined a "harm" as "… including but not limited to, unauthorized access to or use of ALPR information…." (Civ. Code § 1798.90.54(a).); *see also*

*Bartholomew v. Parking Concepts, Inc.*, 2026 WL 308163 (Cal. Ct. App. Feb. 5, 2026).

83. Plaintiff McGinity and Class Members at no point provided Impark or Does with authorization to *access* his ALPR information pursuant to § 1798.90.54(a), and as such he was harmed by the Defendants actions, in addition to the harms previously alleged.

84. Plaintiff McGinity and Class Members at no point provided Impark or the Does with authorization to *use* his ALPR information pursuant to § 1798.90.54(a), and as such he was harmed by the Defendants actions, in addition to the harms previously alleged.

85. Impark and the Does' conduct was knowing, willful, and/or reckless when they *accessed* his ALPR information without authorization.

86. Impark and the Does' conduct was knowing, willful, and/or reckless when they *used* his ALPR information without authorization.

87. Pursuant to § 1798.90.54(a), Plaintiff is entitled to, and requests "any other sanctions, penalties, or remedies provided by law," and requests pursuant to § 1798.90.54(b) a combination of any one or more of the following:

(1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500).

(2) Punitive damages upon proof of willful or reckless disregard of the law.

(3) Reasonable attorney's fees and other litigation costs reasonably incurred.

(4) Other preliminary and equitable relief as the court determines to be appropriate.

## <u>COUNT II</u>

**Violation of California Civil Code §§ 1798.90.51 and 1798.90.52**
**(Failure to Implement Code Compliant Privacy Policy and Maintain a Record)**
(By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants, Including Does 1—100)

88. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint as though alleged in this Count.

89. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Impark and the Does.

90. Pursuant to § 1798.90.51, "[a]n ALPR operator shall do all of the following:"

> (a) Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.
>
> (b)(1) Implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR operator has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.
>
> (2) The usage and privacy policy shall, at a minimum, include all of the following:
>
> (A) The authorized purposes for using the ALPR system and collecting ALPR information.
>
> (B) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.
>
> (C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.
>
> (D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.
>
> (E) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.
>
> (F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.
>
> (G) The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

Cal. Civ. Code § 1798.90.51(a), (b)(1)-(2).

91. Defendants did not maintain a "record of access" in violation of § 1798.90.52, nor did they require that ALPR information only be used for the authorized purpose described in the usage and privacy policy.

92. Plaintiff Sean McGinity is a natural person and thus, an "individual" pursuant to § 1798.90.54.

93. Impark is an "ALPR Operator" pursuant to § 1798.90.5(c) because it monitors,

maintains, and/or controls the ALPR systems featured at its parking facilities, in that (among other things) Impark maintains control over the continued existence and usage of these ALPR systems, and it is involved in and/or has some level of participation in the operation of these ALPR systems and the maintenance of the technical infrastructure of the ALPR systems to ensure reliability and the security of the data the ALPR systems collects.

94. Defendants used "ALPR information" pursuant to § 1798.90.5 because they collected Plaintiff's Personal Information or data, as well as the Personal Information or data of the Class Members, by utilizing an "ALPR System" at Impark's parking lots and garages. Specifically, Defendants owned or operated a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

95. Defendants do not have a policy compliant with each required element under § 1798.90.51(b)(1) because it fails to ensure or disclose Defendants' use of ALPR information consistent with Plaintiff's right to privacy and civil liberties and does not disclose the authorization necessary to obtain access.

96. Specifically, Defendants do not have a policy compliant with each required element under § 1798.90.51(b)(1) because they do not have an ALPR policy available to the public in writing in its lots/garages, because they did not have a general ALPR policy on their Website (impark.com) at all as of February 23, 2026, and because the ALPR policy posted as part of a lot or garage's "Lot Details" is not conspicuous.

97. The collection and use of a person's ALPR information without making a policy about such collection/use publicly available constitutes a "harm" under Civil Code § 1798. *See Bartholomew v. Parking Concepts, Inc.*, 2026 WL 308163 (Cal. Ct. App. Feb. 5, 2026). Plaintiff McGinity and others similarly situated had their ALPR information and/or PII collected or used by Defendants without a conspicuous privacy policy about that collection/use made available to them.

98. Plaintiff was also "harmed" for the reasons incorporated and alleged herein.

Each Defendant's conduct was knowing, willful, and/or reckless when they used and accessed his ALPR information without authorization.

99. Pursuant to § 1798.90.54(a), Plaintiff is entitled to, and requests "any other sanctions, penalties, or remedies provided by law," and requests pursuant to § 1798.90.54(b) a combination of any one or more of the following:

(1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500).

(2) Punitive damages upon proof of willful or reckless disregard of the law.

(3) Reasonable attorney's fees and other litigation costs reasonably incurred.

(4) Other preliminary and equitable relief as the court determines to be appropriate.

**<u>COUNT III</u>**

**Violation of California Civil Code §§ 1798.90.53**

**(Failure to Implement Code Compliant Privacy Policy and Maintain a Record)**

(By Plaintiff, Individually and on Behalf of All Class Members, Against All Defendants, Including Does 1—100, in the alternative to Count II)

100. Plaintiff hereby incorporates by reference the allegations contained in all proceeding paragraphs of this complaint as though alleged in this Count.

101. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Impark and the Does.

102. Plaintiff brings this claim in the alternative to Count II.

103. Pursuant to § 1798.90.53, "[a]n ALPR end-user shall do all of the following:"

> (a) Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.
>
> (b)(1) Implement a usage and privacy policy in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR end-user has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.
>
> (2) The usage and privacy policy shall, at a minimum, include all of the following:
>
> (A) The authorized purposes for accessing and using ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to access and use ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws and a process for periodic system audits.

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E) The title of the official custodian, or owner, of the ALPR information responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(G) The length of time ALPR information will be retained, and the process the ALPR end-user will utilize to determine if and when to destroy retained ALPR information.

Cal. Civ. Code § 1798.90.53(a), (b)(1)-(2).

104. Plaintiff Sean McGinity is a natural person and thus, an "individual" pursuant to § 1798.90.54.

105. Impark is an "ALPR end-user" pursuant to § 1798.90.5(a) because it "accesse[d] or use[d] an ALPR system." Cal. Civ. Code § 1798.90.5(a).

106. Defendants used "ALPR information" pursuant to § 1798.90.5 because they collected Plaintiff's Personal Information or data, as well as the Personal Information or data of the Class Members, by utilizing an "ALPR System" at Impark's parking lots or garages. Specifically, Defendants had access to or used a computerized database in conjunction with the operation of one or more fixed cameras, utilizing computer algorithms to read and convert images of license plates into computer readable data.

107. Defendants do not have a policy compliant with each required element under § 1798.90.53(b)(1) because it fails to ensure or disclose Defendants' use of ALPR information consistent with Plaintiff's right to privacy and civil liberties and does not disclose the authorization necessary to obtain access.

108. In addition, Defendants do not have a policy compliant with each required element

under § 1798.90.53(b)(1) because they do not have an ALPR policy available to the public in writing in its lots/garages, because they did not have a general ALPR policy on their Website (impark.com) at all as of February 23, 2026, and because the ALPR policy posted as part of a lot or garage's "Lot Details" is not conspicuous.

109. The collection and use of a person's ALPR information without making a policy about such collection/use publicly available constitutes a "harm" under Civil Code § 1798. *See Bartholomew v. Parking Concepts, Inc.*, 2026 WL 308163 (Cal. Ct. App. Feb. 5, 2026). Plaintiff McGinity and others similarly situated had their ALPR information and/or PII collected or used by Defendants without a conspicuous privacy policy about that collection/use made available to them.

110. Plaintiff was also "harmed" for the reasons incorporated and alleged herein. Each Defendant's conduct was knowing, willful, and/or reckless when they used and accessed his ALPR information without authorization.

111. Pursuant to § 1798.90.54(a), Plaintiff is entitled to, and requests "any other sanctions, penalties, or remedies provided by law," and requests pursuant to § 1798.90.54(b) a combination of any one or more of the following:

(1) actual damages, but not less than liquidated damages in the amount of two thousand five hundred dollars ($2,500).

(2) Punitive damages upon proof of willful or reckless disregard of the law.

(3) Reasonable attorney's fees and other litigation costs reasonably incurred.

(4) Other preliminary and equitable relief as the court determines to be appropriate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgement against Defendants, as follows:

(a) For an order certifying the Class and naming Plaintiff's attorneys as Class Counsel to represent the members of the Class;

(b) For an order declaring that Impark and the Does' conduct violates the statutes referenced herein;

(c) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury but no less than $2,500 for each violation of Civil Code § 1798;

(d) For prejudgment interest on all amounts awarded;

(e) For punitive and exemplary damages

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order requiring Impark and the Does to undertake a corrective action;

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit; and

(i) Granting such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 23, 2026

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: /s/ Philip L. Fraietta
Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
Julia K. Venditti (State Bar No. 332688)
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0708
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com
jvenditti@bursor.com

*Attorneys for Plaintiff and the Putative Class*